Rehearing refused May 28, 1906.

————o————

## No. 3940.

### (Court of Appeal, Parish of Orleans.)

### MAY TUCKERMANN vs. JOHN H. JACKSON, JR.

1. Where a contract consists of several parts, so that there are several promises based on several considerations, the fact that one or more of these considerations is illegal will not void all the promises of those which were made upon legal obligation are severable from the others.

2. The burden of proving that the consideration of a contract was illegal, or that the contract was illegal for any other reason, is upon the party asserting such illegality, and to sustain such defense the illegality must be clearly shown.

Appeal from Civil District Court, Div. D.

R. J. Maloney, Plaintiff and Appellant.

Adams & Middleton, Defendant and Appellee.

MOORE, J. Plaintiff is the keeper of a house of prostitution

399

in the City of New Orleans and sells intoxicating liquors on her premises.

Defendant was a patron of her establishment patronizing both departments and was profligate in his purchase of both wine and women.

He was what the witness who testified in the cause called "an old-timer," which, they explain, means "one who is not by any means an innocent person who happened to drop into the neighborhood (set apart for lewd and abandoned women,) and is taken advantage of." His trafficking at plaintiff's establishment was more than frequent and extended over a period of four years.

From the 3rd day of March, 1902 to the 25th day of December of that year he incurred an indebtedness to plaintiff amounting to $686.00 which, according to plaintiff's detailed and itemized account annexed to her petition, and excepting $14.00 paid by plaintiff for defendant at his request for cab hire; $12.00 for a worthless check which he had given her on account of his indebtedness; $5.00 for a front door glass which he had deliberately broken; $5.00 for a visitor's hat which he had wantonly smashed, was for champagne wine and bottled beer which he had ordered of plaintiff for himself, the inmates of the house and the kindred spirits who would generally accompany him on his visits to this establishment and who were all thus made the recipients of his bounty in these bibulous convivialities.

Plaintiff's bill being unpaid, notwithstanding, as the evidence shows, his repeated admission of the correctness of the bill and promises to pay same, it was placed in the hands of an attorney. The latter wrote the defendant several letters calling his attention to this unpaid bill, expressing a disinclination to bring suit thereon and thus expose the defendant to public scandal and requested some amiable adjustment of the claim. To these letters no reply was vouchsafed and suit, therefore followed. Whilst he employed counsel to defend the suit it appears that the suit did not interfere with his visits to the plaintiff's establishment, for it is shown, and by his own admission on the stand as a witness, that he continued his visits to plaintiff's house during the pendency of the suit.

The defenses urged are, substantially:

*First,* That the transaction is against public policy and therefore void, in that the plaintiff is not a liquor dealer but sells liquors adjunctively with her other business, which latter business is illicit and immoral.

*Second,* That the quantity and prices charged for the beer and wine are not true and correct and

*Third,* That the transaction lacked consent on the part of the defendant as he was invariably drunk on the occasions when it is alleged he ordered the liquors sued for.

There was judgment in favor of the plaintiff for th sum of $14.00, the amount of cab hire paid for defendant; a non suit for the two items of $5.00 each for the broken glass and the hat destroyed and rejecting all other items.

The reasons assigned by the trial judge for the rejection of all the other items was because, to quote from his written reasons, "the defendant testifies that part of the amount which is claimed by the plaintiff was for services rendered to him by the inmates of the house" adding: "The two items are so closely interwoven that it is impossible for the Court to say what proportion of this bill is due for beer and wine. The evidence is very clear to the effect that the money is due for beer and wine and women."

We understand from this opinion that the trial judge considered that an indebtedness in the amount sued for had been proven, but that as it could not be ascertained from the evidence what was the apportionment or amount actually due for wine and beer, and what was for "services rendered by the inmates of the house" to the defendant, the whole transaction became tainted and therefore void; but that if it had been shown that the entire bill sued for was really and truly for wine and beer and not for the other purposes stated, or if it were shown what portion of the bill was for wine and beer, he would have given judgment therefor. This is a correct announcement of the law, for it is well settled that where the consideration of a contract consists of several different elements, and no apportionment or separate valuation, or means of apportionment or valuation of

the different elements of the consideration is made by the parties, the entire contract will be held illegal, if one of the elements of the consideration is immoral or against public policy. But it is equally as well settled that where a contract is part illegal and the illegal part is severable from the balance, the effect of such illegality is not to render the whole contract illegal, but the Courts will recognize and enforce the legal part and this is true even though the illegality arises out of the violation of a statutory prohibition. A. & E. Eney, 2 Ed. Vol. 15, p. 959. As said by Willis, J., in Pickering vs. Ilfraconde R. Co. L. R. 3, C. P. 250: "Where you cannot sever the illegal from the legal part of a covenant the contract is altogether void; but when you can sever them, whether the illegality be created by statute or by the common law, you may reject the bad part and retain the good." See also U. S. vs. Bardley, 10 Pet (U. S.) 343, 360, 363.

But our esteemed brother of the lower Court is entirely in error as to the facts. The defendant does not testify, as stated by the trial judge "that part of the amount which is claimed by the plaintiff was for services rendered to him by the inmates of the house, nor do any of the witnesses so testify; nor is it even so intimated or hinted, or suggested either by him or the other witnesses, nor is it even inferable from the testimony adduced.

There were but three witnesses who testified in the cause, the plaintiff and one of the inmates of her establishment, and the defendant.

Their testimony was taken out of the presence of the trial judge.

The plaintiff and her witnesses verify correctness of the detailed and itemized bill annexed to the petition; their testimony conclusively establishes the purchase of the wine and beer on the dates and in the quantities stated on the account sued on; they do not testify to any thing which might suggest the suspicion that either in the quantity stated or the prices charged there was included, or intended to be included, or that there was even any thing due and owing "for the services of the inmates," and as evidencing the fact that it was not the thing of defendants case that the items charged and the prices fixed, comprehended

or included or were intended to comprehend or include this other matter, the learned counsel for defendant did not even question either his own witness and client, or the plaintiff and her witness, as to whether these items and prices included or even intended to include the services of the inmates." The prices charged, $5.00 for quart bottle for champagne, and $1.00 per quart bottle of beer, are admitted by the defendant to be the prices charged for these liquors in houses of this character.

So far as the testimony of the defendant is concerned is does not only not contradict the plaintiff and her witnesses testimony in the slightest particular either as to their statement that the defendant ordered the wine and beer on the occasions stated in the account; that the quantity was as so stated; that defendant was on the following day of the several occasions when the lqiuors were ordered, given a statement thereof; that he entered them on a "little red book" which he always carried with him, and that he repeatedly promised to pay same. On the contrary his entire testimony is confined to showing that on all occasions stated in the account he was so beastly drunk that he had no idea whatsoever what was taking place; that he cannot recall that he was in plaintiff's house at or about the periods charged; that he ordered any wine and beer at all; nor can he remember that a detailed account was always given him; that he entered it in a "little red book." which he carried in his pocket, or even that he ever had at that time a "little red memorandum book."

In fact his memory when testifying, on which occasion we assume he was sober, was as blank to facts which existed when he was sober, as they appeared to be to facts which occured when he says he was drunk. His answers are a series of "I don't remember;" except when testifying in cheif. As to the correctness of the account he is asked in his direct examination: "Is this a true and correct account of what is due her?" He answered. I am sure not."

On cross examination he is asked: "On the account appears about 25 to 28 visits covering a period of about 7 months, and you have no recollection whether that statement may be approx-

imately true or not? to which he answered, "No I don't know whether it is true or not.

. Three or four different times during the progress of his testimony he is handed the account and requested to point out any error in the bill whether as to quantities, dates, prices, charges, or to the objects therein mentioned, to which he invariably answers that he cannot do so, because he does not remember. "I don't remember the facts at all. I don't know facts of 1902 or 1901."

The account being referred to he is asked: "You are not able to say postively, Mr. Jackson, are you with reference to any particular item on this account, whether it is due or not, is that correct?" A . I am positive, most positive, yes, I am positive that it is not correct." Q. "Can you particularize the items that are not correct?" A. Certainly not, how can I?" Q. "You can not refer to any particular item on the account and testify positively, concerning any one of them that might not be due?" A. "Why no?" Q. And it is possible in your opinion, that you might have gone in there on those various dates and ordered these liquors without recollecting having done so." A. "That was in 1902. I don't remember; no, sir."

Q. "Then you are uncertain as to the items charged on the account, because your memory does not serve you that far back?" A. "I don't know, I coulndn't say." We cite this except from the defendants testimony to show that he could not have said, as he, indeed, did not say, that "part of the amount which is claimed was for services rendered by the inmates of the house."

It is argued here by the counsel for defendant that forasmuch as it is shown that the plaintiff charged $1.00 per quart for beer, for which she paid only 15 cents, and five dollars for a quart bottle of champagne, which cost her only $3.00, it must be inferred that there was included in this charge the services of the inmates for the purpose of illicit sexual intercourse.

This we may not do. The rule is that the burden of proving that the consideration of a contract was illegal, or that the contract was illegal for any other reason, is upon the party asserting such illegality and to sustain such a defense the illegality must

404

be clearly shown. Besides, this is conclusively shown by the plaintiff and her witness and by the defendant himself that these are the prices charged for wine and beer generally in the locality where plaintiff resides and, as we have said, there is not the slightest suggestion that these prices include anything else.

There is no merit in the contention that because plaintiff also conducts an immoral business she may not recover on contracts connected with her lawful business because they are both conducted in the same establishment.

It may not be doubted that the vendor of the wine and beer to the plaintiff might recover of her the price thereof though he knew the purpose to which she was to employ them; *id est* to sell them in her house of ill-fame; and it has been held that though liquor is sold by the proprietors of a bawdy house in conjunction with her immoral house, she is none the less conducting a licenseable business, quoad the selling of liquors, and is answerable to the payment of a license tax, both State and City.

State vs. White, 115 La. (Sou. Rep. Vol. 40 No. 1 p. 44). If the keeper of such an establishment can be made to pay, a license for vending liquors, and can be legally held for her purchase therefor, even though the vendor knew that it was to be used in her house, 24 A. 591; 25 A. 78; 26 A. 108, it follows that she may legally recover from those to whom she vends such goods.

There is no rule of public policy which operates to deprive this class of unfortunate women from enforcing a contract arising from a legitimate business transaction, simply because at the same time and place, they may be engaged in another business of an immoral character. It may be that it is well that it is so; for when men of the habits of defendant come to know that when they frequent and patronize such establishments they can be made to pay for the liquors which they order, it may serve to keep them away from such places, or at least to make them moderate in their desires if they should visit them.

Defendant freely and voluntarily contracted for the wine and beer sued for and he must be made to pay for same.

It is apt here to quote a passage from Sir George Jessel,

Master of the Rolls, in Printing & Numerical Co. vs. Simpson, 19 Eg. 462-465.

He said: "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as against public policy, because there is one thing which more than other public policy requires, it is that men of full age, and competent understanding, shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily shall be held sacred, and shall be enforced by Courts of Justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract."

The items of wine and beer amount to $650.00, which, together with the item of $14.00 paid for cab hire at defendant's request, which latter amount the trial judge properly allowed, aggregate the sum of six hundred and sixty-four dollars and for this amount plaintiff is entitled to judgment.

It is therfore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by increasing the amount awarded plaintiff, from fourteen dollars to the sum of six hundred and sixty-four dollars, the costs of both courts to be taxed against the defendant and appellee; and as thus far amended the judgment is affirmed.